Filed 8/31/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARIO BARRERA, et al.,<br><br>    Plaintiffs and Respondents,<br>v.<br><br>APPLE AMERICAN GROUP LLC, et al.,<br><br>    Defendants and Appellants. | A165445<br><br>(Marin County<br>Super. Ct. No. CIV2003539) |

Plaintiffs Mario Barrera and Francisco Varguez sued defendants—a nationwide restaurant chain—to recover civil penalties under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.)[1] for various Labor Code violations suffered by them and by other employees. Defendants moved to compel arbitration. The trial court denied the motion and defendants appealed.

Based on *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___, [142 S.Ct. 1906] (*Viking River*) and the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), we conclude the parties' agreements require arbitration of plaintiffs' PAGA claims that seek to recover civil penalties for Labor Code violations committed against plaintiffs. On an issue of California law that the California Supreme Court has recently resolved, we conclude plaintiffs' PAGA claims that seek to recover civil penalties for Labor Code violations

---

[1] Undesignated statutory references are to the Labor Code.

1

committed against employees other than plaintiffs may be pursued by plaintiffs in the trial court. (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*).)

Therefore, the order denying defendants' motion to compel arbitration is reversed in part and affirmed in part.

## BACKGROUND

### The Parties and the General Setting

Defendants and appellants are Apple American Group LLC; Apple American Group II LLC; Apple Mid Cal LLC; Apple Mid Cal II, LLC; Apple NorCal LLC; Apple SoCal LLC; Apple SoCal II LLC; Flynn Restaurant Group LP; Flynn Restaurant Group LLC; and Winecountry Apple, LLC (collectively, defendants). According to the operative complaint, defendants are related companies that together own and operate 460 Applebee's restaurants in California and other states.

Plaintiffs and respondents are Mario Barrera and Francisco Varguez (collectively, plaintiffs). Barrera started working as a kitchen manager at an Applebee's restaurant in San Rafael in approximately October 2001. Varguez started working as a cook at the same restaurant in approximately September 2008.

During their employment, plaintiffs were presented with and signed documents that included an arbitration provision, the details of which will be described below. Plaintiffs were no longer employed by defendants as of March 2020.

### The Proceedings Below

On December 31, 2020, plaintiffs filed a complaint against defendants, and on April 15, 2021, a first amended complaint, in which plaintiffs alleged a single cause of action under PAGA for civil penalties on behalf of

2

themselves and other current and former employees of defendants.  The cause of action is predicated on alleged violations of the Labor Code.[2]  The first amended complaint asserts that plaintiffs are "aggrieved employees" for purposes of an action under PAGA, and that they complied with the requirements for commencing a PAGA action.

Initially, the case proceeded in relatively ordinary fashion, with defendants filing a demurrer, plaintiffs serving discovery requests, and defendants responding to those requests.

However, in March 2022, defendants filed a motion to compel arbitration and to stay proceedings.  It was accompanied by a memorandum of points and authorities and several declarations, including of Tina Meyer, one of defendants' California human resources business partners.

In her declaration, Meyer stated that in August 2017, defendants migrated their onboarding process onto an online portal that employees could log onto using their own usernames and passwords, and access various employment documents.  Barrera, on August 9, 2017, and Varguez, on August 10, 2017, logged onto the online portal; accessed the employee

---

[2] Plaintiffs alleged:  failure to pay overtime wages (§§ 510, 1198); failure to pay minimum wages (§§ 1182.12, 1194, 1197, 1198); failure to provide meal and rest periods (§§ 226.7, 512, subd. (a), 516, 1198); failure to pay timely wages (§ 204); failure to provide accurate and complete wage statements (§§ 226, subd. (a), 1198); failure to maintain payroll records (§ 1174, subd. (d)); failure to pay all earned wages during employment and upon termination (§§ 201 to 204); withholding tips and gratuities (§ 351); failure to provide suitable seating (§ 1198); failure to pay reporting time pay (§ 1198); failure to reimburse employees for work-related expenses (§ 2802); and failure to provide written notice of material information (§ 2810.5, subd. (a)(1)(A) to (C)).  Plaintiffs alleged that these failures also violated "the applicable Industrial Welfare Commission Wage Order."  They did not specify the applicable wage order(s) except with respect to a few of the alleged violations.

handbook containing the "Dispute Resolution Program" booklet and the "Receipt of Dispute Resolution Program Booklet and Agreement to Abide by Dispute Resolution"; and signed the agreement electronically.

Meyer attached these agreements to her declaration. Under the paragraph entitled "MUTUAL PROMISE TO RESOLVE CLAIMS BY BINDING ARBITRATION," the agreements state: "In signing this Agreement, both the Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute. *We also agree that any arbitration between the Company and me will be on an individual basis and not as a representative, class or collective action.*" (Italics added.)

The agreements then provide: "This is an agreement to arbitrate all legal claims. Those claims include . . . claims for a violation of any other non-criminal federal, state or other governmental law, statute, regulation, or ordinance." They also state that by entering into the agreement, "I am giving up my right to have my legal claims against the Company decided in court by a judge or jury" and also "giving up my rights to pursue a class, representative or collective action."

The agreements further state that "the Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings under this Agreement."

Meyer's declaration then explained that "employees such as Mr. Barrera and Mr. Varguez may be asked to read and sign the 'Receipt of Dispute Resolution Program Booklet and Agreement to Abide by Dispute Resolution' during their employment when a new version of the document was issued or for other record-keeping reasons." On January 5, 2018,

4

Barrera and Varguez each signed a paper copy of the updated version of the agreement. A representative of defendants also signed the agreements.

This later version of the agreement contains similar language as the earlier version signed in 2017, except as follows. The paragraph "MUTUAL PROMISE TO RESOLVE CLAIMS BY BINDING ARBITRATION" states: "*We also agree that any arbitration between the Company and me will be on an individual basis and not as a class or collective action.*" (Italics added.) Thus, this version, unlike the earlier version, does not include a reference to "representative" actions.

Meyer then concludes her declaration by stating: "I am informed and believe that once an individual is presented with the [Dispute Resolution Program] or Acknowledgment, there is no limit on the amount of time an individual may take to review and either reject or accept the Agreement. Likewise, once and individual is presented with the Employee Handbook, there is no limit on the amount of time that individual may take to review and either acknowledge or reject the Employee Handbook."

In their motion, defendants sought to compel arbitration of plaintiffs' PAGA claims based on Labor Code violations that plaintiffs suffered personally (rather than their PAGA claims based on violations suffered by other employees). According to defendants, "the only obstacle to arbitration of the claim[s] here" was the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which holds that an employee's pre-dispute agreement to waive his or her right to bring a PAGA action in any judicial or arbitral forum is unenforceable. Defendants referred to a pending United States Supreme Court case, *Viking River*, in which defendants indicated they expected the United States Supreme Court to overturn *Iskanian*. Based on this,

5

defendants requested the court order arbitration of the PAGA claims predicated on Labor Code violations personally suffered by plaintiffs. Alternatively, defendants requested that the court stay proceedings pending the outcome of *Viking River*.

Plaintiffs opposed the motion, arguing that under then controlling law, "representative PAGA claims cannot be compelled to individual arbitration"; that defendants failed to establish the prerequisites for the issuance of a stay; and that defendants failed to prove the existence of a valid, binding arbitration clause. On the last point, plaintiffs maintained that the arbitration agreements they signed in 2018, not in 2017, were the operative agreements. Plaintiffs asserted that the operative agreements were unconscionable, and that defendants waived their right to arbitrate by delaying bringing the motion and litigating the case in court.

Defendants filed a reply, responding to, among other arguments, plaintiffs' defenses of unconscionability and waiver.

On May 17, 2022, the motion came on for hearing, prior to which the trial court had issued a tentative ruling denying the motion and stay request. Following argument, the court adopted the tentative as the final order. In denying the motion, the court relied on a rule that pre-dispute agreements to arbitrate PAGA claims are unenforceable, a rule followed by many California Courts of Appeal based on language in *Iskanian*. (Citing *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 622.) In denying the stay request, the court stated it would not speculate on the outcome of the United States Supreme Court's pending decision in *Viking River* and that the interests of justice would not be served by further delaying the proceedings.

On June 6, defendants appealed.

On June 15, the United States Supreme Court issued its decision in

*Viking River*.  (*Viking River*, *supra*, 596 U.S. ___ [142 S.Ct. 1906].)  Over one month later, defendants filed a renewed motion to compel arbitration based on *Viking River*.  The court requested, and the parties submitted, supplemental briefs addressing whether the court had jurisdiction to consider the renewed motion while defendants' appeal was pending.  The court concluded it did not have jurisdiction to rule on the renewed motion.

## DISCUSSION

### Introduction to the Analysis

Defendants argue that under either the 2017 or 2018 version of the arbitration agreement, and based on the United States Supreme Court's decision in *Viking River*, plaintiffs must be compelled to arbitrate their PAGA claims based on Labor Code violations they personally experienced (i.e., "individual" PAGA claims).  Once those claims are compelled to arbitration, defendants assert, plaintiffs lose standing to pursue in court their remaining PAGA claims based on Labor Code violations suffered by other employees (i.e., "non-individual" PAGA claims).  Additionally, defendants ask us to decide in their favor plaintiffs' defenses of unconscionability and waiver, issues that the trial court did not reach.

In response, plaintiffs at the outset ask us to dismiss the appeal and to issue monetary sanctions against defendants for bringing a frivolous appeal.  On the merits, plaintiffs dispute that the "operative" arbitration agreements—which they contend are the agreements the parties had signed in 2018—require arbitration of the PAGA claims.  But even if their individual PAGA claims must be arbitrated, plaintiffs contend, they maintain standing to litigate the non-individual PAGA claims in court.  Further, plaintiffs reassert that defendants waived their right to compel arbitration by delaying bringing their motion and litigating the case in court.  Plaintiffs do not

7

address their claim of unconscionability.

Before we address these arguments, we determine whether the 2017 agreements or the 2018 agreements are the operative agreements. The trial court did not expressly state which agreements controlled. However, in the "Background" section of its ruling, the court cited to the 2018 agreements and stated that "both Plaintiffs Barrera and Varguez signed separate arbitration agreements with Defendants in which they agreed that 'by entering into this Agreement, I am giving up my right to have my legal claims against the Company decided in court by a judge or jury." We therefore infer that the court considered the 2018 agreements to be the operative arbitration agreements.

Defendants do not challenge this implied finding; indeed, they argue it makes no difference which set of agreements governs because they are entitled to their requested relief under either version. Given this, we will proceed on the understanding that the 2018 agreements are the operative agreements, which we will refer to as the "Agreements." (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [a trial court's decision is presumed to be correct, and the appellant has the burden to demonstrate any error].)[3]

_____

[3] We also note that neither party raised in their moving and opposing papers or their appellate briefs the delegation clause in the Agreements, which state "the arbitrator, and not any . . . court, shall have the exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of this agreement." Instead, the parties proceeded as if the trial court would decide those issues. Thus, even if we assume the parties did agree to delegate certain issues to the arbitrator, they have forfeited that contractual right and have submitted the matter to the court. (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1071, citing *In re Checking Account Overdraft Litigation MDL No. 2036* (11th Cir. 2012) 672 F.3d 1224, 1228 [holding party waived its right to arbitrate the unconscionability of the arbitration clause by asking the district

Against this backdrop, we turn to the governing legal principles on compelling arbitration.

**Arbitration Generally and the Standard of Review**

The governing law is both federal and state in character. We begin with federal law.

The FAA applies to contracts that involve interstate commerce (9 U.S.C. §§ 1, 2), but since arbitration is a matter of contract, the FAA also applies if it is so stated in the agreement. (See *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355.) Here, defendants assert, and plaintiffs do not dispute, that the FAA applies. We agree, as the Agreements provide the FAA would control.

Section 2 of the FAA provides in relevant part: "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Under the FAA, there is a strong policy favoring arbitration. (*Moses H. Cone Memorial Hospital v. Mercury Construction* (1983) 460 U.S. 1, 24; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–972.) "The overarching purpose of the FAA is to ensure the enforcement of arbitration agreements according to

---

court to decide the unconscionability challenge, rather than invoking the delegation clause]; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 515, fn. omitted [holding that party "cannot now complain about the court's authority to rule on [certain] issues" where the party "fail[ed] to ask the court to defer [those issues] to the arbitrator"]; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 771 ["Employers forfeited any right to have the arbitrator decide whether the parties have entered into a contract to arbitrate Mendoza's underlying claims by failing to properly preserve those claims in the trial court. They also waived that right by fully litigating the question there and here"].)

their terms . . . ." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344 (*Concepcion*).) Therefore, "[a]rbitration is a matter of consent . . . ." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 479; *Lamps Plus, Inc. v. Varela* (2019) ___ U.S. ___ [139 S.Ct. 1407, 1415–1416].)

" 'Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements according to their terms, . . . we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute.' " (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 219; see *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944.)

" 'General contract law principles include that "[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . 'The words of a contract are to be understood in their ordinary and popular sense.' " [Citation.] Furthermore, " '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.]" ' [Citation.]" (*Vaughn v. Tesla, supra*, 87 Cal.App.5th at p. 219.) Also, ambiguities or doubts about the scope of an arbitration agreement must be resolved in favor of arbitration. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323; accord, *Lamps Plus, Inc. v. Varela, supra*, ___ U.S. ___ [139 S.Ct. 1407 at p. 1418].)

The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration any defense, such as unconscionability and waiver. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); see *St. Agnes Medical Center v. PacifiCare of California* (2003)

10

31 Cal.4th 1187, 1195.)

"Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo. [Citation.]" (*Pinnacle, supra,* 55 Cal.4th at p. 236.)[4]

**Waiver of the Right to Compel Arbitration**

Because the issue of waiver is potentially determinative, we address it first.

Initially, as noted above, plaintiffs opposed arbitration on waiver grounds, but the trial court did reach the issue. Defendants ask us to decide the issue in the first instance as a matter of law. Given that the trial court's ruling was limited in scope, we could in theory remand to the trial court to consider the matter. However, we agree with defendants that "because the issue is purely one of law which we would be reviewing de novo, nothing would be gained by remanding for this purpose." (*Rayyis v. Superior Court* (2005) 133 Cal.App.4th 138, 150, fn. 10; accord, *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1251.) We thus resolve the issue here as a matter of law.

Plaintiffs argue that defendants waived the right to arbitrate by "litigating this case for over a year" before filing their motion to compel arbitration. We disagree.

*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, review

---

[4] Plaintiffs argue "the appeal is subject to a heightened standard of review" because "the parties advanced conflicting views of the facts before the trial court. . . ." But plaintiffs do not point us to any specific facts they claim are conflicting. Nor do they specify the "heightened standard of review" they ask us to apply. In any event, our review of the record and the parties' briefs reveals that the issues presented on appeal do not require resolving any conflicting evidence. Therefore, de novo review applies. (*Pinnacle, supra,* 55 Cal.4th at p. 236.)

11

granted June 14, 2023, S279546 (*Piplack*), a case defendants cite in their reply brief, is on point. And we agree with its analysis. In *Piplack*, the plaintiffs sued the defendant under PAGA. "Initially, the case proceeded in relatively ordinary fashion, with the filing of answers, demurrers, amended complaints, and a discovery motion. However, in February 2022, defendant filed a motion to compel arbitration," explaining the delayed timing of its motion was due to then pending United States Supreme Court decision of *Viking*, in which the defendant indicated it expected the United States Supreme Court to overturn or materially alter the California Supreme Court's decision in *Iskanian*. (*Piplack*, *supra*, 88 Cal.App.5th at p. 1286.)

On appeal, the plaintiffs renewed their argument the defendant waived the right to arbitrate by litigating the case in the trial court. (*Piplack*, *supra*, 88 Cal.App.5th at p. 1289.) Although the trial court did not reach the issue, the Court of Appeal resolved the issue in favor of the defendant as a matter of law. (*Ibid.*) The appellate court analogized the case to *Iskanian*, which considered whether the defendant had waived its right to compel arbitration by failing to pursue its arbitration rights until the United States Supreme Court issued *Concepcion*, *supra*, 563 U.S. 333. (*Piplack*, at p. 1289, citing *Iskanian*, *supra*, 59 Cal.4th at pp. 374–378.) As explained in *Piplack*: "The defendant in *Iskanian* initially filed a petition to compel arbitration at the outset of the case, then withdrew it after the California Supreme Court issued *Gentry*[ *v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*)]. (*Iskanian*, at p. 376.) But when the United States Supreme Court issued *Concepcion* and effectively invalidated *Gentry*, the defendant renewed its motion for arbitration, citing the change in the law. (*Iskanian*, at p. 376.) The California Supreme Court held this delay, and the cost of the related intervening proceedings in the trial court, could not constitute waiver

because the failure to file a 'futile' motion to compel arbitration was not an unreasonable delay. (*Id.* at pp. 376–377.)" (*Piplack*, at p. 1289.)

The *Piplack* court then observed, "Similarly, in the present case, defendant raised its right to arbitrate as soon as it had any chance of success." (*Piplack*, *supra*, 88 Cal.App.5th at p. 1289.) "If anything, defendant moved too quickly by seeking to compel arbitration before the United States Supreme Court could decide *Viking*." (*Piplack*, at p. 1289, fn. 5.) "The fact that defendant vigorously defended itself in the trial court makes no difference because the relevant question is whether there was any unreasonable delay." (*Id.* at p. 1289.)

Likewise here. Defendants moved to compel arbitration soon after it learned the United States Supreme Court granted certiorari in *Viking River* with respect to the *Iskanian* rule—which they explained in their motion was "the only obstacle to arbitration of the claim here" and likely to be overturned in *Viking River*. Thus, as in *Piplack*, defendants "raised [their] right to arbitrate as soon as [they] had any chance of success." (*Piplack*, *supra*, 88 Cal.App.5th at p. 1289.) Given these circumstances, any delay in bringing their motion was not unreasonable. Defendants therefore did not waive their right to arbitrate as a matter of law.

**Arbitrability of the PAGA Claims**

### *The Law on Agreements to Arbitrate PAGA Claims*

**PAGA**

PAGA authorizes any "aggrieved employee" to initiate a civil action against a former employer "on behalf of himself or herself and other current or former employees" to recover civil penalties for violations of the Labor Code ordinarily "assessed and collected by the Labor and Workforce Development Agency . . . ." (§ 2699, subd. (a).)

13

"An employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] . . . Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. [Citation.] Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. [Citation.] 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*), italics omitted.)

### *Iskanian*

In *Iskanian*, the California Supreme Court held "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) *Iskanian* further held that the FAA does not preempt a rule against waivers of the type described above, stating: "[A] PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the state, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, *supra*, 59 Cal.4th at pp. 386–387.)

Based on *Iskanian*'s reasoning that the state is the real plaintiff in interest in a PAGA action, California Courts of Appeal subsequently held

14

that an employee's pre-dispute agreement to arbitrate PAGA claims is unenforceable absent a showing the state also consented to the agreement. (E.g., *Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 550, fn. 3; *Correia v. NB Baker Electric, Inc., supra,* 32 Cal.App.5th at p. 622; *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 869–872; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 445–449; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677–680.)

"This rule and the logic behind it seemed sound—until *Viking River*." (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 128 (*Nickson*).)

### *Viking River*

In *Viking River*, the United States Supreme Court considered whether the FAA preempted certain of *Iskanian*'s holdings. (*Viking River, supra,* 596 U.S. at pp. \_\_\_, \_\_\_ [142 S.Ct. at pp. 1913, 1917].)

The *Viking River* court began its analysis by explaining PAGA claims are "representative" in two ways. (*Viking River, supra,* 596 U.S. at p. \_\_\_ [142 S.Ct. at p. 1916].) First, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Id.* at p. \_\_\_ [142 S.Ct. at p. 1916].) In that sense, " ' "*every* PAGA action is . . . representative" ' and '[t]here is no individual component to a PAGA action,' [citations], because every PAGA claim is asserted in a representative capacity." (*Id.* at p. \_\_\_ [142 S.Ct. at p. 1916].) Second, some PAGA actions are "representative" in that they are brought by one employee to recover civil penalties for Labor Code violations committed against other employees. (*Viking River*, at p. \_\_\_ [142 S.Ct. at p. 1916].)[5]

---

[5] As explained in *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 652–653, review granted May 3, 2023, S279021 (*Galarsa*): "The United States Supreme Court stated it would endeavor to be

15

As another preliminary matter, the Supreme Court, in a footnote, rejected *Iskanian*'s holding that the FAA does not apply to PAGA claims. (*Viking River*, *supra*, 596 U.S. at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4], quoting *Iskanian*, *supra*, 59 Cal.4th at p. 387.)  Specifically, it rejected *Iskanian*'s reasoning "that a PAGA action lies outside the FAA's coverage entirely because § 2 is limited to controversies 'arising out of' the contract between the parties [citation] and a PAGA action 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the state.' [Citation.]" (*Viking River*, at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4], quoting *Iskanian*, at p. 387.)  *Viking River* concluded that "disputes resolved in PAGA actions satisfy this requirement," because "[t]he contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship. [Citation.]" (*Viking River*, at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4].)  Moreover, "nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of § 2." (*Ibid.*)

---

clear in its use of the term 'representative' and would use the phrase ' "individual PAGA claim" to refer to claims based on code violations suffered by the plaintiff.' [(*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916].])  In addition, the court used the term 'non-individual claims' without explicitly defining it (*id.* at p. ___ [142 S.Ct. at pp. 1924, 1925]), but the opinion readily implies such claims are representative claims are pursued by the plaintiff and based on Labor Code violations suffered by employees other than the plaintiff."  Here, we will refer to PAGA claims based on code violations personally suffered by a plaintiff as "individual" claims, and PAGA claims based on code violations suffered by employees other than the plaintiff as "non-individual" claims.  (See *Adolph*, *supra*, 14 Cal.5th at p. 1114 ["For consistency, we use the terms 'individual' and 'non-individual' claims in accordance with the high court's usage in *Viking River*"].)

Given its conclusion that the FAA applies, the court went on to consider whether the FAA preempts two of *Iskanian*'s rules, which it described this way: "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense. That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum. But *Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Viking River, supra*, 596 U.S. at pp. ___–___ [142 S.Ct. at pp. 1916–1917].)

The *Viking River* court determined the FAA does not preempt *Iskanian*'s principal rule. (*Viking River, supra*, 596 U.S. at pp. ___–___, ___–___ [142 S.Ct. at pp. 1922–1923, 1924–1925].) It reasoned that because the FAA is concerned with the forum in which disputes are resolved, not with the substantive law that resolves them, it did *not* preempt this rule. (*Id.* at p. ___ [142 S.Ct. at p. 1919].) Thus, even after *Viking River*, a contractual waiver of the right to prosecute PAGA claims is unenforceable as against California public policy.

However, the *Viking River* court held the FAA preempts *Iskanian*'s secondary rule "preclud[ing] [the] division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1924].) If splitting were allowed, the court reasoned, parties might prefer to resolve higher-stakes nonindividual claims in court, where appellate review is available to correct errors, but to arbitrate lower-stakes individual claims. (*Ibid*.) But *Iskanian*'s prohibition on contractual splitting of PAGA claims "circumscribes the freedom of parties

17

to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate' " by imposing on them an all-or-nothing choice: arbitrate both individual and non-individual claims or forego arbitration entirely. (*Viking River*, at p. ___ [142 S.Ct. at p. 1923].)

The court then turned to the agreement at issue, which required "arbitrat[ion] [of] any dispute arising out of [the plaintiff's] employment" and contained a waiver provision "providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action. . . ." (*Viking River, supra,* 596 U.S. at p. ___ [142 S.Ct. at p. 1916].) The agreement also included a "severability clause specifying that . . . if any 'portion' of the waiver remained valid it would be 'enforced in arbitration.' " (*Ibid.*) The court relied on that clause in concluding the defendant was entitled to compel arbitration of the plaintiff's individual claim, even though the arbitration agreement was invalid as to the representative claim. (*Id.* at p. ___ [142 S.Ct. p. 1925].)

### *Analysis*

With an understanding of *Viking River*, and by reading the plain language of the Agreements, we agree with defendants that plaintiffs' individual PAGA claims must be sent to arbitration.

As noted, the Agreements state: "In signing this Agreement, both the Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute. We also agree that any arbitration between the Company and me will be on an individual basis and not as a class or collective action."

Two paragraphs later, the Agreements state: "**This is an agreement to arbitrate all legal claims.** Those claims include: . . . claims for a

18

violation of any other non-federal, state or other governmental law, statute, regulation or ordinance . . . ."

The second paragraph unambiguously mandates arbitration of "all legal claims," which include "claims for a violation of [a] . . . state . . . statute." These broad provisions no doubt cover plaintiffs' PAGA claims that are based on defendants' alleged Labor Code violations.

The first paragraph does provide a limitation, namely that claims submitted to arbitration "will be on an *individual basis* . . . ." (Italics added.) As noted, *Viking River* characterized PAGA claims based on violations the plaintiff personally sustained as "individual" claims, and PAGA claims based on violations that other employees sustained as "non-individual" claims. (See *Viking River*, *supra*, 596 U.S. at pp. ___, ___–___ [142 S.Ct. at pp. 1916, 1924–1925].) Based on this, we construe the "individual basis" limitation contained in the Agreements here as requiring arbitration of only plaintiffs' individual PAGA claims, thereby precluding arbitration of the non-individual PAGA claims. (See, e.g., *Parsittie v. Schneider Logistics, Inc.* (C.D.Cal. Feb. 8, 2023, CV 19-03981-MWF (AFMx)) 2023 U.S. Dist. LEXIS 21754 at *27 [provision that " 'claims must be submitted [to arbitration] on an individual basis only' " read as requiring arbitration of only the individual PAGA claims, and precluding arbitration of non-individual claims]; *Nickson, supra,* 90 Cal.App.5th at p. 130 [provision stating arbitration of covered claims " 'can only be brought . . . on an individual basis' " meant that plaintiff's "individual PAGA claims can be arbitrated, while his nonindividual . . . claims cannot"].) And under *Viking River*, it is permissible for arbitration agreements to split PAGA claims in this manner. (See *Viking River*, at p. ___ [142 S.Ct. at p. 1925].)

Plaintiffs nonetheless argue that the Agreements do not encompass

their PAGA claims whatsoever. Preliminarily, we note that plaintiffs present a number of arguments, but do not do so under appropriate headings. Plaintiffs' substantive arguments fall under the heading "Strong Contractual Reasons Exist for Denying Appellants' Motion," and specifically its two subheadings. However, some of the arguments do not match the subheadings they fall under. Also, plaintiffs repeat some of the same arguments under the different subheadings. We are not inclined to repair this situation by stitching the arguments together and then supplementing them to create coherent reasoning. Accordingly, we will address the arguments in the order presented by plaintiffs.

Plaintiffs' first subheading asserts: "Unlike the *Viking River* Agreement, the Proffered Arbitration Agreements Contain No PAGA Waiver and No Disaggregation of PAGA Claims into 'Individual' and 'Representative' Components." Under this subheading, plaintiffs first argue that the Agreements in this case, "unlike that at issue in *Viking River*, do[es] not contain a representative, PAGA, or qui tam action waiver." They also state the Agreements do not "disaggregate[ ] [the PAGA claims] into 'individual' and 'representative' components." Instead, plaintiffs argue, the Agreements contain a "a waiver of 'class and collective' actions," which *Viking River* explained is not the same as a PAGA claim. Plaintiffs conclude that because the Agreements contain no PAGA or "representative" waiver, "there is simply no basis to compel arbitration in this case."

Plaintiffs do not articulate why the absence of a PAGA waiver in the Agreements necessarily precludes defendants' requested relief. But they seem to suggest the Agreements must expressly include language waiving the right to arbitrate "representative" or "PAGA" claims before a court may split PAGA actions into arbitrable and non-arbitrable claims. We reject such

20

a suggestion.

It is true that the provision at issue here is not explicit as the one in *Viking River*, which expressly prevented arbitration of "any dispute as a class, collective, *or representative PAGA action*." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916], italics added.) However, plaintiffs virtually ignore the language in the Agreements stating the parties agreed that "any arbitration . . . . will be on an *individual basis* . . . ." (Italics added.) As explained above, given *Viking River*'s characterization of PAGA claims based on violations suffered by other employees as "non-individual" claims (see *Viking River*, at pp. ___, ___–___ [142 S.Ct. at pp. 1916, 1924–1925]), the provision referring to arbitration "on an individual basis" indicates that only individual PAGA claims can be arbitrated. Indeed, as plaintiffs acknowledge in their summary of *Viking River*, that decision recognized that "if the parties **contracted** for PAGA arbitration on an individual basis . . . , then PAGA claims can be split into an individual claim that can be sent to arbitration . . . ."

Next, we address plaintiffs' passing statement within its discussion of the lack of a PAGA waiver that the Agreements do not "even mention[] PAGA." The suggestion that the Agreements do not cover PAGA claims because they do specifically mention "PAGA" is simply unpersuasive. As concluded above, the broad language in the Agreements providing for arbitration of "all legal claims," including "claims for a violation of [a] . . . state . . . statute," clearly covers PAGA claims.

Plaintiffs then argue that the Agreements do not cover PAGA claims based on their characterization of a PAGA action as a dispute between the employer and the state (rather than the employer and employee). Plaintiffs largely rely on *Viking River* but, as defendants observe, that decision rejects

21

plaintiffs' assertion. Specifically, the United States Supreme Court disagreed with *Iskanian*'s reasoning "that a PAGA action lies outside the FAA's coverage entirely because § 2 is limited to controversies 'arising out of' the contract between the parties [citation] and a PAGA action 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the state.' [Citation.]" (*Viking River, supra,* 596 U.S. at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4], quoting *Iskanian, supra,* 59 Cal.4th at p. 387.) *Viking River* concluded that "disputes resolved in PAGA actions satisfy this requirement," because "[t]he contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship. [Citation.]" (*Viking River*, at p. ___ [142 S.Ct. at p. 1919, fn. 4].) The court further stated, "[N]othing in the FAA categorically exempts claims belonging to sovereigns from the scope of § 2." (*Ibid.*)

We move on to plaintiffs' second subheading: "Because the Agreements Do Not Contain A Representative Action Waiver, Appellants' Request for Relief Is Invalid." Under this subheading, plaintiffs first argue that even if the Agreements cover PAGA claims, they require the parties to arbitrate both the individual *and* non-individual PAGA claims. Because defendants sought to compel only the individual PAGA claims, plaintiffs contend, this court "cannot provide the relief [defendants] seek" and must affirm the order denying the motion to compel arbitration. We disagree. This argument is again premised on plaintiffs' disregard for the Agreements' provision stating that "any arbitration . . . will be on an individual basis."

For this reason, plaintiffs' reliance on *Diaz v. Macy's West Stores, Inc.* (C.D.Cal. Nov. 23, 2022, CV 19-00303 PSG (MAAx)) 2022 U.S. Dist. LEXIS

22

212825 (*Diaz*) is misplaced.  In *Diaz*, the defendants argued the plaintiff was required "to arbitrate her individual PAGA claims against Defendant and [was] precluded from bringing non-individual PAGA claims against Defendant in the arbitration." (*Diaz*, *supra*, 2022 U.S. Dist. LEXIS 212825, at \*5.)  The district court agreed with the first point, but rejected the second.

On the first point, the *Diaz* court explained that the first paragraph of the arbitration agreement "unambiguously mandates arbitration for all employment-related disputes arising out of any law—federal, state, or local—except where otherwise limited.  That broad provision no doubt covers Plaintiff's individual PAGA claims that are based on Defendant's alleged Labor Code violations." (*Diaz*, *supra*, 2022 U.S. Dist. LEXIS 212825, at \*9.)

Regarding the second point, the *Diaz* court found that the second paragraph of the arbitration agreement did "not on its face exclude representative PAGA claims from being adjudicated in the same arbitration proceeding." (*Diaz*, *supra*, 2022 U.S. Dist. LEXIS 212825, at \*10–11.)  The second paragraph provided:  "The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding.  Nor shall the Arbitrator have the power to hear an arbitration as a class or collective action." (*Id.* at \*9.)  The *Diaz* court noted that there was no mention of a representative PAGA claim, which, under *Viking River*, is distinct from class or collective actions. (*Diaz*, at \*10–11, citing *Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916].)  As such, there was no limitation precluding the representative PAGA claims from being arbitrated in the same proceeding as the individual PAGA claims.  In other words, "representative PAGA claims f[e]ll within the capacious language of the first paragraph as an employment-related dispute." (*Diaz*, at \*11.)

Here, it is true that the Agreements are similar to that of *Diaz* in that

they broadly describe the types of claims subject to arbitration and include a waiver of the right to arbitrate "as a class or collective action." However, unlike in *Diaz*, the Agreements here include additional language that restricts arbitration "on an individual basis." As such, *Diaz* is inapposite.

In sum, in defining the scope of arbitrable claims, the Agreements provide that only individual PAGA claims can be arbitrated. Under *Viking River*, this is permissible. Therefore, the order denying defendants' motion to compel arbitration is incorrect. Plaintiffs' individual claims can be arbitrated—unless the Agreements are unenforceable on some other ground.

**Unconscionability**

In opposing the motion to compel arbitration, plaintiffs argued the Agreements are unconscionable. The trial court did not decide the issue. As with the waiver issue, we may decide the unconscionability issue in the first instance since our review does not call for the resolution of contested facts. (See *Rayyis v. Superior Court*, *supra*, 133 Cal.App.4th at p. 150, fn. 10; *Higgins v. Superior Court, supra,* 140 Cal.App.4th at p. 1251.)

As another preliminary matter, defendants assert plaintiffs have abandoned their unconscionability defense by failing to address it in their respondents' brief. Despite plaintiffs' omission, we decline to treat it as a default or concession and will decide the issue on the record and defendants' appellate briefs. (Cf. *In re Bryce C.* (1995) 12 Cal.4th 226, 232–233 ["Although some courts have treated the failure to file a respondent's brief as . . . a consent to a reversal, . . . the 'better rule . . . is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found' "]; Cal. Rules of Court, rule 8.220(a)(2).)

Turning to the merits, we begin with the applicable law. "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding

24

whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.]" (*OTO L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) " 'The procedural element [of the unconscionability doctrine] addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.]" (*Ibid.*)

"Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.)

"The burden of proving unconscionability rests upon the party asserting it. [Citations.]" (*OTO*, *supra*, 8 Cal.5th at p. 126.)

We first address procedural unconscionability. The extent of plaintiffs' argument on this issue in their opposing papers is this single paragraph: "[A]ll of Defendants' non-exempt employees were forced to sign an arbitration agreement if they wanted to be hired or continue to work at an Applebee's Franchise. Meyer Decl. ¶¶ 5 & 9. The arbitration agreement was one of a plethora of documents presented to Plaintiffs, and Plaintiffs did not have a meaningful opportunity to negotiate its terms. Meyer Decl. ¶¶ 5–6 & 9. Rather, it was presented on a take-it or leave-it basis, along with the other onboarding documents. *Id.* Each of these facts favors a finding of procedural

25

unconscionability."

As just quoted, plaintiffs' procedural unconscionability arguments relied solely on the declaration of defendants' California human resources business partner, Tina Meyer, attached to the motion to compel arbitration. Plaintiffs did not present separate evidence. In paragraphs 5 and 6 of her declaration, Meyer describes how defendants in August 2017 migrated its onboarding process to an online portal and began directing current and employees to use the portal "to fill out required employment information and sign documents"; that although employees may print copies of any documents they wish to retain in hard copy, they must digitally sign all documents that require a signature; and that employees "were afforded time (on the clock) to sign the [employment] documents." Then, in paragraph 9, Meyer states that "employees such as [plaintiffs] may be asked to read and sign the 'Receipt of Dispute Resolution Program Booklet and Agreement to Abide by Dispute Resolution' during their employment when a new version of the document was issued or for other record-keeping reasons." Meyer also avers that hand-signed copies of the updated version of the agreement were contained in plaintiffs' personnel files.

The paragraphs cited by plaintiffs establish the general facts that plaintiffs were presented with versions of the agreement during their employment and that they signed those documents either digitally or in paper copy. However, those and other paragraphs of the declaration do not provide much information on the circumstances surrounding the formation and negotiation of the Agreements. (See *OTO*, *supra*, 8 Cal.5th at pp. 126–127 [circumstances relevant to establishing oppression include the amount of time the party is given to consider the proposed contract; amount and type of pressure exerted on the party to sign the proposed contract; the length of the

proposed contract and the length and complexity of the challenged provision; the education and experience of the party; and whether the party's review of the proposed contract was aided by an attorney].) For example, the declaration does not provide the context in which plaintiffs were presented with and signed the Agreements, other than the means by which they could view and sign it (i.e. via the online portal or in hard copy). It does not set forth any discussions defendants may have had with the plaintiffs before they were presented with and signed the Agreements. The declaration also does not shed light on plaintiffs' ability or inability to negotiate and understand the terms of the Agreements. What the declaration does state, however, is that when using the online portal, employees were "afforded time (on the clock) to sign documents." It also states "there is no limit on the amount of time an individual may take to review and either . . . reject [or accept the Agreement.]"

In view of the above, Meyer's declaration does not contain any facts or raise any reasonable inferences that plaintiffs were "forced to sign" the Agreements, or that they lacked "a meaningful opportunity to negotiate [the] terms," or that the Agreements were "presented on a take-it or leave-it basis." "Absent any evidence, we cannot just assume there was procedural unconscionability." (*Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1248.)

But even assuming plaintiffs have shown procedural unconscionability, they have failed to show substantive unconscionability. Plaintiffs argued below that "the arbitration agreement[s] [are] substantively unconscionable on [their] face because [they] contain[ ] an illegal provision that seeks to force PAGA claims into arbitration." However, as defendants note, this argument is foreclosed by *Viking River*, which upheld the validity of agreements to

27

arbitrate PAGA claims, except to the extent they contained a wholesale waiver to bring a PAGA action in any forum. (See *Viking River*, *supra*, 142 S.Ct. at pp. 1924–1925.)

Accordingly, we conclude as a matter of law that plaintiffs did not meet their burden in establishing the Agreements are unconscionable.

**Standing to Pursue Non-Individual Claims**

Having concluded there are valid agreements to arbitrate plaintiffs' individual PAGA claims, the question, then, is what to do with plaintiffs' non-individual PAGA claims.

In *Viking River*, the United States Supreme Court suggested that once the plaintiff was required to arbitrate her individual PAGA claim, her non-individual claim must be dismissed. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925].) *Viking River* reasoned: "Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. [Citation.] When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. [Citation.]" (*Viking River*, at p. ___ [142 S.Ct. at p. 1925].)

Defendants argue we should dismiss the non-individual claims for lack of standing, as suggested in *Viking River*. Plaintiffs contend this court is not bound to follow federal decisions interpreting state law, and under the rules on PAGA standing established by the California Supreme Court in *Kim*, they do not lose statutory standing to maintain their non-individual PAGA claims in court. Plaintiffs prevail, as our Supreme Court has recently held in *Adolph*, *supra*, 14 Cal.5th 1104.

By way of brief background, since *Viking River* at least five published

28

California Court of Appeal decisions have squarely addressed the issue of whether a plaintiff continues to have standing under PAGA to litigate non-individual claims after the individual claims are compelled to arbitration. And all five reached the same conclusion:  dismissal for lack of standing is not required by California law.  (*Nickson, supra,* 90 Cal.App.5th at pp. 134–135; *Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1139–1141, review granted June 14, 2023, S279932 (*Seifu*); *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 805–806, review granted June 14, 2023, S279722 (*Gregg*); *Piplack, supra,* 88 Cal.App.5th at p. 1292, review granted June 14, 2023, S279546; *Galarsa, supra,* 88 Cal.App.5th at pp. 652–653, review granted May 3, 2023, S279021.)  The California Supreme Court recently took up the issue in *Adolph* and, citing with approval the five unanimous decisions of the Courts of Appeal, concluded that "[w]here a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph*, *supra*, 14 Cal.5th at p. 1114; see *id.* at pp. 1120–1123, 1128.)  Applying *Adolph* here, as we must, we conclude that plaintiffs maintain standing to pursue their non-individual PAGA claims in court.  We now reproduce some of the reasoning employed in *Adolph* and the cases cited therein.

As plaintiffs assert, California is not bound by the United States Supreme Court's interpretation of PAGA and its standing requirements. (*Adolph*, *supra*, 14 Cal.5th at p. 1114.)  Indeed, as Justice Sotomayor made clear in her concurrence, the Supreme Court was opining on what it conceded could be a mistaken view of California law.  (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925] (conc. opn. of Sotomayor, J.) ["[I]f this Court's

understanding of state law is wrong, California courts, in an appropriate case, will have the last word."].) Also, the Chief Justice, together with Justices Barrett and Kavanaugh, declined to support the dismissal of the non-individual PAGA claims. (*Id.* at p. ___ [142 S.Ct. at p. 1926] (conc. opn. of Barrett, J.) [Justice Barrett concurring in part and in the judgment, declining to join part IV, which "addresses disputed state-law questions as well as arguments not pressed or passed upon in this case"].) Accordingly, we independently assess the standing requirements for plaintiffs to continue to pursue their non‑individual claims in court.

As noted, PAGA authorizes an "aggrieved employee" to recover civil penalties for violations of the Labor Code "to be assessed and collected by the Labor and Workforce Development Agency." (§ 2699, subd. (a).) "For purposes of [PAGA], 'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).) " 'In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment[,]' [citation][,] . . . look[ing] first to 'the words of the statute, which are the most reliable indications of the Legislature's intent.' [Citation.]" (*Adolph*, *supra*, 14 Cal.5th at p. 1120.)

Relying on its previous decision in *Kim*, the California Supreme Court in *Adolph* reiterated the statutory requirements a plaintiff must satisfy to have standing to recover civil penalties under PAGA. (See *Adolph*, *supra*, 14 Cal.5th at p. 1120, citing *Kim*, *supra*, 9 Cal.5th at pp. 84–91.) As distilled in *Adolph*, *Kim* explained: " 'The plain language of section 2699(c) has only two requirements for PAGA standing.' (*Kim*, *supra*, 9 Cal.5th at p. 83.) The plaintiff must allege that he or she is (1) 'someone "who was employed by the alleged violator" ' and someone ' "against whom one or more of the alleged

violations was committed." ' (*Id.* at pp. 83–84, quoting § 2699, subd. (c).)

"In *Kim*, we declined to impose additional requirements not found in the statute. (*Kim*, *supra*, 9 Cal.5th at pp. 84–91.) The plaintiff, Kim, sued his employer, alleging individual claims for damages and a PAGA claim for civil penalties. (*Kim*, at p. 82.) Kim settled and dismissed the individual claims for damages, proceeding only with the PAGA claim. (*Kim*, at p. 82.) The employer conceded that Kim had PAGA standing when he filed suit but argued that Kim's 'standing somehow ended' once his individual claims settled. (*Kim*, at p. 84.) According to the employer, PAGA standing is premised on an unredressed injury, and because Kim received compensation for his injury, he no longer had the status of an 'aggrieved employee.' (*Kim*, at p. 84.)

"We rejected this argument, finding it inconsistent with the statutory language in several respects. (*Kim*, *supra*, 9 Cal.5th at pp. 83–86.) First, '[t]he Legislature defined PAGA standing in terms of violations . . . . Kim became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him,' and '[s]ettlement did not nullify these violations. The *remedy* for a Labor Code violation, through settlement or other means, is distinct from the *fact* of the violation itself,' and only the latter is required for PAGA standing. (*Kim*, at p. 84.) Second, nothing in the text of the statute requires the plaintiff to have an unredressed injury; reading such a requirement into the statute would be 'at odds with the statutory definition.' (*Id.* at p. 85.) Third, allowing post-violation events to strip an aggrieved employee of the ability to pursue a PAGA claim 'would add an expiration element to the statutory definition of standing.' (*Kim*, at p. 85.)" (*Adolph*, *supra*, 14 Cal.5th at pp. 1120–1121.)

The court in *Adolph* also found instructive *Johnson v. Maxim*

*Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924 (*Johnson*), which "similarly declined to read into the statute a standing requirement not supported by its language." (*Adolph*, *supra*, 14 Cal.5th at p. 1121.) In *Johnson*, the plaintiff alleged a single cause of action under PAGA. The employer demurred on the grounds that the plaintiff lacked standing because her individual PAGA claims were-time barred. The trial court sustained the demurrer without leave to amend. (*Johnson*, at p. 927.) Relying on *Kim*, the Court of Appeal reversed, explaining the plaintiff had standing to pursue her PAGA claim because she satisfied the statutory definition of an " 'aggrieved employee.' " (*Johnson*, at p. 930.) "The fact that [the plaintiff's] individual claim may be time-barred does not nullify the alleged Labor Code violations nor strip [the plaintiff] of her standing to pursue PAGA remedies." (*Ibid.*)

As observed in *Adolph*, "*Kim* and *Johnson* make clear [that] a worker becomes an 'aggrieved employee' with standing to litigate claims on behalf of fellow employees upon sustaining a Labor Code violation committed by his or her employer." (*Adolph*, *supra*, 14 Cal.5th at p. 1121, citing *Kim*, *supra*, 9 Cal.5th at pp. 84–85; *Johnson*, *supra*, 66 Cal.App.5th at p. 930; § 2699, subd. (c).) The court in *Adolph* then concluded, "Standing under PAGA is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum. Arbitrating a PAGA plaintiff's individual claim does not nullify the fact of the violation or extinguish the plaintiff's status as an aggrieved employee, any more than the time-barring of remedies did in *Johnson* or the settlement of the individual damages claims did in *Kim*." (*Adolph*, *supra*, 14 Cal.5th at p. 1121, citing *Kim*, at pp. 84–85; *Johnson*, at p. 930.) "In sum, where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-

32

individual claims in court." (*Adolph*, supra, 14 Cal.5th at p. 1123.)

This interpretation, the court stated, also comports with the statute's legislative history and purpose, " 'which is "to ensure effective code enforcement." ' [Citations.]" (*Adolph*, *supra*, 14 Cal.5th at p. 1123.) "An interpretation of the statute that impedes an employee's ability to prosecute his or her employer's violations committed against other employees would undermine PAGA's purpose of augmenting enforcement of the Labor Code." (*Id.* at pp. 1122–1123.)

Turning to our case, we apply *Kim* and *Adolph* on the question of PAGA standing and hold that plaintiffs here have established standing to recover civil penalties under PAGA for Labor Code violations committed against other employees. In the operative complaint, plaintiffs alleged they were employed by defendants, that they suffered "one or more" Labor Code violations on which their PAGA claim is based, and that they seek "to recover civil penalties . . . on behalf of [themselves] . . . and other current and former employees who worked for Defendants." They are therefore "aggrieved employee[s]" within the meaning of PAGA with standing to assert PAGA claims on behalf of themselves and other employees. (See *Kim*, *supra*, 9 Cal.5th at pp. 84–85; *Adolph*, *supra*, 14 Cal.5th at p. 1121.) And as *Adolph* holds, the requirement that plaintiffs resolve their individual PAGA claims in arbitration does not strip them of their standing to litigate their non-individual PAGA claims in court. (*Adolph*, *supra*, 14 Cal.5th at pp. 1114, 1120–1123, 1128.)

Defendants' arguments that plaintiffs lack standing to pursue the non-individual PAGA claims are unpersuasive. In their opening brief, defendants contend that "[n]othing in PAGA's statutory text or legislative history suggests Plaintiffs can still be classified as 'aggrieved employees' in a

separate action once their PAGA claims are sent to arbitration." However, such an interpretation is at odds with that of our Supreme Court in *Adolph* and *Kim*. (See *Adolph, supra,* 14 Cal.5th at pp. 1114, 1120–1123, 1128; *Kim, supra,* 9 Cal.5th at pp. 83–91.) Not surprisingly, defendants' arguments on standing in their opening brief do not mention *Kim*.

Defendants finally confront *Kim* for the first time in their reply brief,[6] contending that it does not apply here. This is because, they argue, *Kim* "was decided under a different legal landscape that could not address the issue presently before this Court." Without citation, defendants represent that "*Kim*'s premise assumed that PAGA claims could not be sent to arbitration under *Iskanian*, which has since been abrogated by *Viking River* . . . ." Defendants mischaracterize *Kim*. Defendants perhaps may be relying on one sentence in *Kim*'s summary of the case's procedural history where it states that the defendant acknowledged in its motion to compel "that the PAGA claim could not be waived [citing *Iskanian*] or arbitrated under the parties' agreement." (*Kim, supra,* 9 Cal.5th at p. 82.) This sentence does not indicate *Kim* "assumed that PAGA claims could not be sent to arbitration under *Iskanian*." Rather, *Kim* assumed that the PAGA claims could not be arbitrated based on "the parties' agreement." Further, *Kim* did not even address the arbitrability of PAGA claims. Thus, defendants offer no persuasive reason why *Kim*'s interpretation of PAGA's standing

---

[6] *Kim* is controlling law in California on the issue of PAGA standing and is directly adverse to defendants' arguments. At least one court has found it inappropriate for an appellant to raise controlling authority for the first time in a reply brief. (See *Brawerman v. Loeb & Loeb LLP* (2022) 81 Cal.App.5th 1106, 1121 & fn. 5 [reminding counsel of duty to disclose legal authority directly adverse to the client's position, where that authority was not cited in appellants' opening brief, but only "for the first time on the 79th page of their reply brief"].)

requirements is no longer viable.

Moreover, any attempts to factually distinguish *Kim* are also unavailing. To the extent defendants argue *Kim* applies only when a plaintiff settles the underlying Labor Code claims, we disagree. The court in *Johnson* rejected a similar argument. After noting the plaintiff alleged she was an "aggrieved employee" under PAGA, the court stated, "[t]he fact that [her] individual claim may be time-barred does not nullify the alleged Labor Code violations nor strip [her] of her standing to pursue PAGA remedies." (*Johnson, supra,* 66 Cal.App.5th at p. 930.) "In this sense, we find the fact that [the plaintiff's] claim is time-barred places her in a similar situation as a plaintiff who settles her individual claims or dismisses her individual claims to pursue a stand-alone PAGA claim." (*Ibid.*) *Johnson* thus rejected the defendant's assertion that *Kim* was limited to the scenario in which a plaintiff settles the underlying Labor Code claims. (*Johnson*, at p. 930.)

Defendants also cite several authorities, but none supports its position. For example, in *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, the Supreme Court held that unions do not have standing under PAGA because they are "not employees" and therefore "cannot satisfy the express standing requirements of [PAGA]." (*Id.* at p. 1005.) But as the Supreme Court in *Adolph* explained, its "rejection of associational standing under PAGA [in *Amalgamated*] has no bearing on the question here." (*Adolph, supra*, 14 Cal.5th at p. 1127.)

Defendants also rely on *Bodine v. Superior Court* (1962) 209 Cal.App.2d 354, but that case is inapposite. There, the appellate court considered whether the trial court erred by agreeing to empanel a jury in the second half of a hearing on a probate petition for determining heirship, when the executor of the estate and the heirs who initially appeared at the hearing

previously stipulated to proceed without a jury. (*Id.* at pp. 356–359.) As observed in *Gregg*, although *Bodine v. Superior Court* "noted severance of a civil action results in two or more separate cases with distinct judgments," it did not "apply this principle in a manner to suggest, let alone hold, that a plaintiff loses standing to assert non-individual claims under PAGA once he or she is compelled to arbitrate his or her individual claim." (*Gregg*, *supra*, 89 Cal.App.5th at pp. 805–806.) Indeed, *Adolph* explained that "[n]othing in PAGA or any other relevant statute suggests that arbitrating individual claims effects a severance. When a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action." (*Adolph*, *supra*, 14 Cal.5th at p. 1124.)

In short, we are compelled to follow *Adolph* and *Kim* and hold that plaintiffs have standing to litigate their non-individual PAGA claims in court.

This leads us to the parties' requests for a stay of the non-individual PAGA claims. Plaintiffs argue that if their non-individual PAGA claims are not dismissed, they should be stayed pending our Supreme Court's decision in *Adolph*, which had not yet been issued at the time of the parties' briefing. However, because *Adolph* has since been decided, plaintiffs' stay request is moot.

In their reply brief, defendants agree that the non-individual PAGA claims should be stayed, but argue the stay should be imposed until the arbitration of the individual claims is completed. As support, defendants cite both the FAA and the California Arbitration Act, which provide that where a court orders arbitration on an issue in any proceeding before the court, the court upon application or motion "shall" stay proceedings pending completion of the arbitration. (9 U.S.C. § 3; Code Civ. Proc. § 1281.4.) Defendants additionally cite to California case law holding that when "issues subject to

36

litigation under . . . PAGA might overlap those that are the subject to arbitration of . . . individual claims, the trial court must order an appropriate stay of trial court proceedings." (*Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, 966.)

Here, the trial court denied defendants' stay request, which was based on different reasons than the ones they now raise. Specifically, defendants requested a stay until then pending *Viking River* was decided, but the trial court denied the request because it declined to speculate on when and how *Viking River* would be decided. Because the court did not have an opportunity to rule on the stay request based on the reasons now raised by defendants, we remand the matter for the trial court to determine whether a stay of plaintiffs' non-individual PAGA claims would be appropriate under the circumstances. (Cf. *Seifu*, *supra*, 89 Cal.App.5th at p. 1143 [because trial court did not have the opportunity to rule on the defendant's stay request, matter was remanded to allow court to determine in the first instance whether a stay of the plaintiff's non-individual claims was warranted]; *Nickson*, *supra*, 90 Cal.App.5th at p. 135 ["We leave management of the superior court litigation during the pendency of arbitration to the trial court's sound discretion"].)

**Requests to Dismiss Appeal and Impose Monetary Sanctions**

Finally, we consider—and deny—plaintiffs' requests that we dismiss the appeal and impose $20,250 in monetary sanctions against defendants for filing a frivolous appeal.

At the threshold, both requests are procedurally defective because they were not filed in separate motions in this court, as required by the Rules of Court. (See Cal. Rules of Court, rule 8.54(a)(1) ["a party wanting to make a motion in a reviewing court must serve and file a written motion"];

*id.*, rule 8.276(a) [requiring a party seeking appellate sanctions to file and serve a motion for sanctions]; see also Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶¶ 5:37a, 5:44, 5:228.3, 11:126.) Plaintiffs' non-compliance is grounds to deny their requests. (See *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858–859; Eisenberg, *supra*, ¶¶ 5:44, 11:126.)

Procedural defects aside, plaintiffs' substantive arguments fail. With respect to the dismissal request, plaintiffs cite case law setting forth the principle that appellate courts generally should not resolve factual disputes in the first instance. However, plaintiffs fail to identify any factual dispute that we must purportedly resolve in this appeal. In any event, as indicated above, the issues presented on appeal do not require us to resolve contested facts.

Plaintiffs also argue that the appeal asks us "to sit in the shoes of a trial court and conduct a first-pass review of the law" and that "no error was made by the trial court in applying pre-*Viking River* law." Plaintiffs do not explain, and we fail to see, how an appeal must be dismissed simply because an appellate court is faced with a change in the law that has intervened after the underlying trial court decision.

Turning to plaintiffs' request for sanctions, they argue we should issue monetary sanctions against defendants for filing a frivolous appeal. (See Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a).) An appeal is frivolous when any reasonable attorney would agree that the appeal is totally and completely without merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649.) Plaintiffs argue the appeal is frivolous because defendants did not wait until after the United States Supreme Court issued its decision in *Viking River* before filing the underlying motion; refused to dismiss this

appeal; and filed a renewed motion to compel arbitration while the appeal was pending. We disagree. Because the law on arbitration of PAGA claims is evolving, defendants were presented with somewhat of a moving target in their efforts to obtain their requested relief. Given this, the manner in which defendants proceeded in both the trial court and in this court was not completely meritless. (See *Piplack*, *supra*, 88 Cal.App.5th at p. 1284, fn. 1 [denying motion to dismiss appeal as frivolous, stating in light of the pendency of *Viking River*, "defendant's appeal presented a good faith argument for a change in the law"].)

The requests to dismiss the appeal and impose monetary sanctions are denied.

## DISPOSITION

The order denying defendants' motion to compel arbitration is reversed in part and affirmed in part. The order is reversed as to plaintiffs' individual PAGA claims. The order is affirmed as to plaintiffs' non-individual PAGA claims. The matter is remanded with directions to the trial court to enter a new order requiring plaintiffs to arbitrate their individual PAGA claims and for further proceedings regarding plaintiffs' non-individual PAGA claims consistent with this opinion. The parties are to bear their own costs on appeal.

39

_____
Richman, Acting P. J.

We concur:


_____
Miller, J.


_____
Markman, J. *


*Barrera v. Apple Amerivan Group LLC* (A165445)


&ast;Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          Marin County Superior Court

Trial Judge:                          Honorable Stephen Freccero;

Attorney for Plaintiffs and           Capstone Law APC, Ryan H. Wu,
Respondents, Mario Barrera,           Tyler Curtis Anderson;
Francisco Varguez:

Attorney for Defendants and           Reed Smith LLP, Kasey J. Curtis,
Appellants, Apple American            Mara D. Curtis, Brittany M.
Group LLC, et al.:                    Hernandez, Tanner Hendershot.